UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT DIBENEDETTO,

                   Plaintiff,

-against-

MAURICE COLEY,

                   Defendant.

**OPINION AND ORDER**

22-CV-05926 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Vincent DiBenedetto ("Plaintiff"), proceeding *pro se*, commenced this action on July 11, 2022 against Maurice Coley ("Coley" or "Defendant") and the New York State Police, pressing claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights arising from an August 15, 2018 traffic stop and an April 2019 court appearance. (Doc. 1). The Court, on September 2, 2022, dismissed Plaintiff's claims against the New York State Police under the doctrine of Eleventh Amendment immunity and held that Plaintiff's claims against Coley were time-barred. (Doc. 4). The Court granted Plaintiff leave to amend the Complaint "to address the timeliness issue, that is, to allege facts showing that the claim is not barred by the statute of limitations or that there is a basis for tolling of the statute of limitations." (*Id.* at 6). Plaintiff filed an Amended Complaint on October 26, 2022. (Doc. 5, "Am. Compl.").

    Before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant filed, pursuant to the briefing schedule set by the Court, its motion to dismiss on January 5, 2024. (Doc. 38; Doc. 39, "Def. Br."). Plaintiff filed two letters in opposition on January 12, 2024 (Doc. 40) and January 22, 2024 (Doc. 41), and the motion was fully briefed with the filing of Defendant's reply on January 24, 2024 (Doc. 42, "Reply").

    For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiff was pulled over by New York State Trooper Coley on the morning of August 15, 2018 as he was driving onto the eastbound entrance ramp of I-84 in Carmel, New York with his 9-year-old daughter. (Am. Compl. at 5-6). As Plaintiff was getting pulled over, he placed the cup of coffee he was holding in his hand at the time into a cup holder. (*Id.*). Coley told Plaintiff that the reason for the traffic stop was that he observed Plaintiff holding his cellphone while driving. (*Id.*). Plaintiff told Coley that he was holding a cup of coffee and not his cellphone. (*Id.*). Coley then asked Plaintiff to hand him his cellphone, which Plaintiff did. (*Id.*). Coley searched through Plaintiff's cellphone and handed it back to him and then requested Plaintiff's license and registration. (*Id.*). Plaintiff let Coley know that his registration and insurance were in his glove compartment and Coley responded "I told you I wanted to see it" in an aggressive tone. (*Id.*). Plaintiff handed Coley his license and registration and Coley wrote Plaintiff a ticket and concluded the traffic stop. (*Id.*). Plaintiff appeared in court in April 2019 regarding the ticket issued by Coley. (*Id.*). Plaintiff introduced—in his defense—his Verizon cellular bill, the cup of coffee from the traffic stop, and his driving abstract. (*Id.*). Plaintiff was examined by the prosecutor regarding his driving record and his daughter's cell phone. (*Id.*). Plaintiff alleges that he searched social media and found that the judge presiding over the hearing was friends with the prosecutor and therefore biased against him. (*Id.*).

Plaintiff's Amended Complaint includes a "timeline of why this has taken on so much time to file in the proper court channels." (*Id.* at 8). Plaintiff alleges that he wanted to immediately appeal the Town Court's decision after the hearing and started the process by asking the Town Court how to file an appeal. (*Id.*). Plaintiff obtained an Affidavit of Errors and a copy of the hearing transcript and mailed copies of those documents to the court in May 2019. (*Id.*). Plaintiff alleges

that he received a letter in December 2021 from the Appellate Term for the 9th and 10th Judicial Districts "that the appeal was denied, case never heard." (*Id.*). Plaintiff alleges that he spoke to a court clerk who told him to fill out and submit a motion. (*Id.*). Plaintiff received a "rejection notice" dated January 7, 2022, which stated: "[t]his court does not have jurisdiction over your application." (*Id.*). Plaintiff says he was then instructed to appeal to the Court of Appeals, which he did in February 2022. (*Id.*). He then received a letter "from the Albany NY Court" dated May 12, 2022, stating that his "application on hand Denied." (*Id.*). Plaintiff alleges he contacted the Court's *pro se* intake unit in June 2022, and also called the Appellate Division in Brooklyn that July and asked a clerk what to do. (*Id.*). That clerk told him "I had to take this up with the Putnam County Supreme Court" first, and then appeal to the Brooklyn Court – which Plaintiff claims to have done already. (*Id.* at 8-9). On July 8, 2022, Plaintiff contacted the "Putnam County NY Court" and spoke with the clerk's office there. (*Id.* at 9.). The clerk "took my full name and number, said she would look into it for me, get back to me with an answer" but at the time of the Amended Complaint months later, she still had not. (*Id.*).

## STANDARD OF REVIEW

I. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[1] "The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir.

---

[1] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

3

2009). However, "[w]hen the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the [complaint] 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Moreover, when deciding a Rule 12(b)(1) motion, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers*, 558 F.3d at 143.

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

4

unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "*pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must

5

accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

### I. *Rooker-Feldman* Doctrine

Defendant argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (Def. Br. at 16). "As *Rooker-Feldman* goes to subject matter jurisdiction, it must be addressed first before the other issues raised" in Defendant's motion to dismiss. *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021) (citing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)). The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021). For *Rooker-Feldman* to apply, "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

The Court interprets Plaintiff's Amended Complaint to press, when construing the pleading with the solicitude to which a *pro se* litigant is entitled, a Fourth Amendment unlawful search claim (related to the August 15, 2018 traffic stop) and a Fourteenth Amendment due process claim (related to the April 2019 hearing regarding the traffic violation). Plaintiff seeks damages for these alleged violations of his constitutional rights. Defendant relies on *King v. Creed* in support of his argument that *Rooker-Feldman* bars Plaintiff's claims, but that case is distinguishable. No. 14-CV-0165, 2015 WL 893573 (N.D.N.Y. Mar. 2, 2015). The plaintiff in *King* claimed "that the suspension of his license was unlawful, and thus his constitutional rights were violated by enforcement of the state court judgment." *Id.* at *3. Plaintiff does not allege that the state court judgment itself violated his constitutional rights. Nor does Plaintiff ask the Court to review or reject the state court judgment, but rather seeks damages "for misconduct that defendants pursued in obtaining" the state court judgment. *See Dorce*, 2 F.4th at 104 ("although plaintiffs may not seek to have a state court judgment voided, [the Second Circuit] has concluded that *Rooker-Feldman* does not bar plaintiffs from seeking compensatory damages for misconduct that defendants pursued in obtaining state court judgments").

Accordingly, the *Rooker-Feldman* doctrine does not bar Plaintiff's claims; and that branch of Defendant's motion made pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

II. Timeliness of Plaintiff's Claims

The Court noted in its Order dated September 2, 2022 that "[i]t appears that Plaintiff's [S]ection 1983 claims against Trooper Coley are time-barred" and granted Plaintiff leave to amend the Complaint "to allege facts showing that the claim is not barred by the statute of limitations or that there is a basis for tolling of the statute of limitations." (Doc. 4 at 3, 6). The statute of limitations governing 42 U.S.C. § 1983 claims in New York is three years. *Pearl v. City of Long*

*Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Plaintiff alleges that, on August 15, 2018, Coley pulled him over without cause and unlawfully searched his cellphone; and that he was denied due process during the April 2019 proceeding. (Am. Compl. at 5-6). Plaintiff filed this complaint on July 11, 2022, more than three years after the date on which he was pulled over and the date of that proceeding. Interpreting Plaintiff's Amended Complaint and motion to dismiss opposition papers "to raise the strongest arguments that they suggest," as the Court must, Plaintiff seems to be arguing that the statute of limitations should be tolled for the period Plaintiff was attempting to appeal the state court judgment. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Plaintiff was not required to exhaust the appellate review process before commencing a claim under Section 1983, and a "mistaken belief that exhaustion of remedies is required is not sufficient to justify equitable tolling." *Burroughs X v. Dorn*, No. 13-CV-03609, 2013 WL 6563153, at *3 (E.D.N.Y. Dec. 10, 2013). Plaintiff does not argue that any other basis exists to toll the statute of limitations here. Plaintiff has failed to allege facts either showing that his claims are not barred by the statute of limitations or that there is a basis for tolling of the statute of limitations.

Accordingly, Plaintiff's claims are barred by the statute of limitations; and that branch of Defendant's motion made pursuant to Fed. R. Civ. P. 12(b)(6) is granted.[2]

---

[2] Given the conclusions reached herein, the Court need not and does not reach Defendant's remaining arguments regarding Plaintiff's failure to state a claim upon which relief can be granted.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 38 and close this case.

**SO ORDERED.**

Dated: White Plains, New York
       March 21, 2024

_____
Philip M. Halpern
United States District Judge